We'll hear next from the parties in In Re. Catalyst Managerial Services. Good morning, Your Honors. May it please the Court, my name is Charlene Sun. I'm with King & Spaulding, which represents the Intervenor Appellant Libya-Africa Investment Portfolio, or LAP in this matter. This is LAP's appeal of the District Court's order granting a 1782 application brought by Petitioner CMS. Several of the discretionary factors set forth in the Intel case wait against granting this discovery. I will speak in the time that I have today about two such factors. First, this discovery was overbroad and disproportionate to the needs of this case. CMS sought seven years' worth of wire transfers involving both LAP and or any of 21 alleged affiliates from 16 banks and stated two clearly pretextual reasons for seeking this information. First, CMS claimed it needed this information to quantify its lost profits claim in the U.K. proceeding. Second, it claimed that it needed this discovery to test the financial disclosures that LAP had already made in the U.K. proceeding, where LAP has already produced three years of financial statements. The problem is this wire transfer information is practically useless for either of those purposes. It is more apparent based on the timing of the 1782 application and the nature of the discovery sought that- You made this argument to the District Court, and in the end, she wasn't persuaded, and our review is abusive discretion. So why don't you tell us? I mean, you would have to say that no court could reasonably reach the conclusion that it was probative on these two issues, right? That's correct, Your Honor. Help us out. We do assert that this was an abuse of discretion, and we believe that the District Court's error here was in granting this discovery wholesale based on a cursory relevance analysis, but failing to analyze the relative value of this wire transfer information in light of the stated needs for obtaining it, which we believe Rule 26 requires through its- Were the CMS payments triggered or affected by profits of LAP at all? I'm sorry? I mean, this question came up before the District Court a lot, too, is tell me how the payments that were going to be made under the contract to CMS were in any way related to the profits LAP was going to get. Do you agree with that, that there is a profit-driven part of the compensation? So as we understand, there were two pieces of the compensation, one for services rendered, and the other piece would be tied to a performance fee, which would be related to the performance of LAP. The problem that we have had with this discovery is that the wire transfer information here can't help them piece together what LAP's performance was. You can't piece together what the profits of LAP's were or, frankly, what the revenues of LAP was based on raw wire transfer data. It's just not there. It would be the equivalent of trying to put together a jigsaw puzzle with only 50 of 1,000 pieces needed to put the picture together. Well, maybe they'll get the pieces from other places. I don't know that, or maybe through other discovery means. But, you know, I mean, the District Court thought that it was at least probative, and one of the problems you have in this case is that there is a suggestion in the proceedings in the United Kingdom that your client was not completely forthcoming there. So with respect to the second issue about the need to test LAP's financial disclosures there, we do want to mention that here the District Court also committed a factual error because we believe the record before the District Court was clear as to what the U.K. Court's statements were concerning LAP's financial disclosures. So here what actually happened was LAP, after a summary judgment was entered in the U.K. proceeding, LAP sought a stay of the execution of that judgment pending its appeal of that judgment, which has since been vacated. However, it asked for a stay of that judgment without security. And in order to do that, they submitted a witness statement by one of LAP's witnesses, Mr. Ahmed Khashoggi, telling the court that LAP did not have the ability to put up security for the judgment. What the U.K. Court said was not — well, what the U.K. Court said was that the information that had been provided by Mr. Khashoggi was not sufficiently detailed and didn't provide enough information concerning LAP's financial status in order to justify granting the stay without security pending the appeal. After that, Mr. Khashoggi submitted an affidavit sworn on penalty of perjury providing additional financial disclosures and attaching three years' worth of LAP's financial statements. The U.K. Court has never, ever questioned the reliability or the veracity of those financial statements or any of the financial disclosures that were made in the affidavit. Why wouldn't this information reasonably show, for example, payments to your client from investments that your client had made, which would be relevant to its profits? Your Honor, it might show some. It might show some. But frankly, the wiretrap — Isn't that enough? So, two points. And this goes back to, I think, the first point that Judge Raji made. It's possible that they may obtain some information that could be later on relevant or they may later realize actually shows revenues or profits belonging to LAP. But without all of the information, they won't know that. The information by itself is meaningless. On top of that, this is not just one piece of some coordinated effort to obtain all the different kinds of financial data that CMS would need to be able to piece together LAP's full financial condition. Suppose one of the transfers was a payment from Carlisle or Blackstone in regard to an investment that had been made. I mean, that would show profit on investment. That wouldn't be a complete picture, but it would be an important bit of data, wouldn't it? Your Honor, I would submit another example of what these wire transfers would probably show. So the wire transfer perhaps might show a transfer from LAP to an investment fund of $10 million. It also might show a payment from Blackstone to your client of $50 million. And the question would be, well, gee, did they have an investment in Blackstone? Was it a profitable investment? Why is Blackstone paying out $50 million? Your Honor, it's true that some of the information may reflect LAP's profits, but for the purposes that CMS claimed it needed this information for, which was to perform a full forensic analysis of LAP's profits and to come up with a bottom-line number that they could use to calculate their own lost profits. No one's claiming that this information is going to be encyclopedic. It's just like all discovery is. I mean, you get information from different directions, and then the lawyers put it together. Your Honor, the one point I want to make about that is, yes, maybe this is only 50 of the 1,000 puzzle pieces, but CMS has made no effort to obtain the other puzzle pieces. They have not asked the U.K. court for any of that discovery. And as far as we're aware, they have not asked any other court in any other country for any discovery that would supplement or somehow aid them in creating the full picture of what LAP's finances were. No one's claiming they're finished with this project. So why isn't it reasonable for them to get this information, which, as you know, would be voluminous, and to tailor their further requests in light of what they see here? As an update to the court, I will mention it's already in the record that the trial in this case is set for April. So the parties have been preparing for trial. It's coming up in a couple of months. They were required in the U.K. proceedings to disclose to each side was required to disclose to the other side and to the court all of the documents that it intended to use at trial to prove its claims. We are at that stage in the U.K. proceedings right now. CMS has disclosed none of the documents that it obtained from this court months ago with respect to these wire transfers. I know you want to reserve some time for rebuttal. Let's hear from your adversary. Thank you, Your Honor. Good morning, Your Honors. My name is Nazi Modiri, Counsel for Catalyst Managerial Services, the appellee. Your Honors, the lower court did not abuse its discretion in granting the 1782 application. It correctly applied the four factors that were set forth in the Intel case, of which I address the three that were contested by Lapp in its brief. First, the lower court correctly determined that the discovery is both relevant and proportional to CMS's claims for the damages, and it is relevant to test the accuracy of information provided by Lapp to the English court. Help me out with what your relevancy argument is. As I was looking at the transcript before the district court, it appears that you argued, or your client argued, that you needed this data because finding out what your adversary, how it profited during this period would then help you determine the loss in value to your company. But now it appears in your brief you're making a somewhat different argument that goes to your own profits under the contract. I may be confused, but why don't you tell me what the relevancy of these materials is. Your Honors, at the oral argument, I did say that this would be a loss in value. If I incorrectly spoke in that specific moment, I corrected it later in the transcript, and I read through the expert report provided by an expert on the damages. These were estimated damages, and the argument is that CMS's profits are twofold. One, there was an agreement where they would be provided performance fees based on Lapp's profits, and that would be a percentage. The other aspect is that CMS had several agreements with Lapp for various ventures. CMS had an equity stake in these ventures, and CMS, after a year, was cut out by Lapp. And so Lapp is trying to find out, I mean, excuse me, CMS is trying to find out what it was cut out, because it had a contract for five years, and Lapp prematurely ended this contract. And so that's the whole point of this discovery. And I think it's, like you said, it's to put the pieces of the puzzle together. It's not going to provide the whole picture, but it will provide some relevant information. So I'm trying to figure out this declaration of Sherry Kirby, who's a solicitor in England. And she says that CMS has not sought the information it seeks under the application in the U.K. courts. Is that true? Is that they didn't try to go at this the other way in England to get it through the other account holder of these accounts? Your Honor, I believe it's true. I think it's true because the information is in the U.S., and that's why we came here. Lapp did most of its business in U.S. dollars. Even if Lapp, assuming that they were for- Why wouldn't Lapp have those records? I'm sorry? Why wouldn't Lapp have those records? That's our question. Why didn't they produce all of those records? Did you seek them? It seems that you have to seek them first, right? Yes. Lapp did produce certain records, but the problem was Lapp doesn't have custody and control over all of the records that we're seeking. There's allegations in England that Lapp siphoned off funds in order to lower their profits, or to be able to show a lower set of profits to CMS and to the English court. And so it would have been futile to seek Lapp's bank records because that wouldn't have shown the whole picture. We need to be able to see- Would you want to get those and match them up against the bank records and say you're hiding something from us? We did get certain records. You did? Lapp did produce- I don't know what they do in England. I'm not sure if they requested, but I know that at some point, I believe counsel said, three years of banking statements were produced. Right, but you're looking for nine years of wire transfer. Correct. We're looking from April 1, 2009, which is the date that CMS entered into the agreement with Lapp. And, Your Honor- To Jody's point, I think, and I want to follow up on this, is what are you going to do with the six years for which you don't have Lapp's statements? I mean, how are those records going to be of any use to you if you don't have Lapp's own statements for that period? Your Honor, I'm not the counsel in England, so I don't know the details of what has been going on there, but the- We're requesting it here, and so we're entitled to know how they're going to be relevant. If you argued you're going to match them against what Lapp says to you, that's fine if you've got the statements, but you've only got statements for three years. My point is that I don't know if they have requested for that information in England. And the thing is, I mean, like you said, it's a puzzle. You piece together, you request discovery. The discovery is still ongoing. Next week, they have witness statements that are due, and the trial is set for the end of April. So regarding-I think we covered the relevancy. And regarding the proportionality that Lapp is claiming Judge Schofield did not assess, Judge Schofield, at oral argument, went into the details of what we're going to be requesting, how this information is going to be used or translated into useful information, and she also went into whether this would be a burden on the banks. She asked whether we would be requiring a deposition. And by the way, none of the banks have rejected. Since these are-we're looking for U.S. dollar-denominated transactions, it seems that the place where we can get the most reliable information is here in the U.S. from the banks, because U.S. dollar-denominated transactions must pass through the U.S., and so that's the whole point for this discovery. The other factor under the intel that Lapp disputes is regarding whether the discovery is within the reach of the English court. I think we covered it a little bit here, but just to reiterate a few factors, discoverability is a factor that the district court consider on these 1782 applications, but it is only considered when that-the person from whom discovery is sought is a participant. Here, the banks are not participants. Lapp has also not explained how it would be able to produce in England the records, the banking records for its affiliates, for the individuals that we believe received siphoned funds. The other thing is that the district court considered Lapp's exhaustion argument, but Judge Schofield accepted CMS's argument, which was supported by the record, that the revenues that were disclosed do not appear to be complete or accurate. Therefore, the information, like I said, is more readily available here in the U.S. And finally, regarding CMS-regarding the third intel factor, CMS's application was not an attempt to circumvent any English restrictions. I don't think counsel spoke about it here today, but-actually, she did. Lapp's managing director had submitted an affidavit to the English court regarding its finances. That affidavit was heavily questioned by the English judge there who said, I find it-I might be misquoting, but I find it incredulous that Lapp's managing director for X amount of years does not know where Lapp's assets are. And Lapp actually submitted an affidavit to the English court stating that they don't have access to many of their banking information or financial information because of turmoil that's going on in Libya. Right now, there are two rival factions that are claiming control over Lapp. And so the banks are refusing to deal with Lapp. So given that the banks are refusing to deal with Lapp, or at least that's what their statement was in the English court, although over here they're saying something else. They're saying, oh, no, we have custody and control of that information. But assuming that they have custody and control, they are giving two different stories to both sides of the pond. And that's not right. And so I think . . . Can I interrupt you for a second on the profits? I'm still having trouble figuring out what the claim for lost profits is. Did the contract specifically say that if we give you advice about making investments and the investments do better than we even thought they were, we'd get a piece of that? I was just reviewing the district court's argument about this again, and I know the district court was still puzzled by that. Where in the agreement does it say that your clients' profits are based on performance? So in the agreement, it states that the MDTSA, which is the name of this agreement, in clause 3.4, it states that we are going to enter into this relationship, and I'm paraphrasing here. We are going to enter into this relationship to do investment business. What happened afterwards was that LAP entered into various separate agreements relating to the different investment areas that CMS was going to help LAP in. And the profits are outlined in those other investment agreements. And this was actually outlined in the expert's report about those various agreements. Your Honors, I won't take up much of your time, but I just want to reiterate that the congressional twin aims of Section 1782 are twofold. One is to provide efficient means of assistance to participants in international litigation, and the second is to encourage foreign countries to provide such assistance to our courts. And the record below fully supports CMS's position that Judge Schofield did not overlook any facts, that she did not abuse her discretion, and that she properly applied the intel factors. Unless there are any other questions, I think. Thank you. Thank you. Ms. Soon. Thank you, Your Honors. Just a few quick points. Council was not able to confirm whether or not the discovery had been sought in the U.K. proceedings. I can. They have not sought any financial data from LAP in the U.K. proceeding to support its lost profits claim, period. With respect to this wire transfer data, I want to reiterate, one, this information is necessarily incomplete. Two, they haven't sought anything else that they would need to complete the exercise. Three, they're not even using what they obtained from this court in the U.K. for purposes of proving their merits on the claim at trial. This clearly shows the pretext of the application and that the only purpose for which this discovery would be useful was not for quantifying LAP's assets, as they say, but rather for identifying where LAP maintains assets for purposes of developing a judgment enforcement strategy. That is the only purpose for which this wire transfer information could actually be useful. With respect to Council's point about our access to the banking records, it is true that LAP has had some difficulty getting the banks to deal with it, given the political turmoil in Libya and competing claims to power that was set forth in Mr. Khashoggi's affidavit. However, it might have been a different conversation with the banks in the presence of a U.K. court order requiring LAP to obtain this information from its banks, but we don't know if that would have been the case because CMS never asked the U.K. court for such an order. Have you advised the U.K. court that CMS is seeking this disclosure here in the United States? My understanding was you have. I believe that the court is aware. And have you asked the court to indicate that it thinks it's irrelevant to have this information because I thought that that wasn't the record in the U.K.? But help me out. We have not asked foróI'm sorry, would this be in the form of a preclusive finding? To the extent you're arguing to us this is of no relevancy to the U.K. case, have you asked the judge in the U.K. to put on the record there that it thinks this would be irrelevant? We have not, Your Honor. Frankly, we have actually asked opposing counsel if we could see the documents that were produced here that would purportedly be used against us. You're arguing to us that records of your bank transfers are irrelevant to the proceeding. Now, they have to seek them here because they're with the banks in the U.S. But if they were in the U.K., would the British judge think that this was relevant or irrelevant to the case there? I don't believe that that argument has been made. I think that the position of Lappó That would be the most obvious way for your client to show us that this is of no value, that the U.K. judge would say, look, I don't think this is necessary. This is just a delay tactic or whatever you're asserting it is. But the U.K. judge hasn't indicated that it thinks this material would be irrelevant and that it would not order its disclosure if it had jurisdiction over it. Just two remarks. One, I guess I'm not sure if there's a procedural way to do this within the context of the U.K. proceedings. And two, I think it would be Lapp's position that it's CMS's burden to demonstrate the relevance of these records if they are going to use them. You're on appeal now saying that it was an abuse of discretion for the district court to grant them this discovery. Right? Yes. Okay. All right. Thank you very much. Thank you to both sides. Thank you, Your Honors. We will take the matter under advisement.